UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JERMAINE M. DOBIE,

       Petitioner,

v.                                         Case No. 3:13cv277/MCR/CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

       Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 5). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 19). Petitioner replied. (Doc. 24). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner was arrested on November 28, 2005, and charged in Walton County Circuit Court Case No. 05-CF-931, with three counts of sexual battery (Counts 1-3) and one count of lewd and lascivious molestation (Count 4) upon his daughter D.C., who was less than 12 years of age at the time.[1]  (Doc. 19, Ex. A, pp. 1-2, 8, 41-42).[2]  D.C. is deaf and communicates through American Sign Language.  Petitioner was initially represented by Assistant Public Defender Matthew Casey.  (Ex. A, p. 7; Ex. PD-1, p. 19).  Petitioner retained private counsel, J. Lorraine Bytell, on August 3, 2006.  (PD-1, p. 17).  Petitioner went to trial on November 6-7, 2006 (Exs. B-C), and a jury found him guilty of Counts 1, 2 and 4 as charged, and not guilty of Count 3.  (Ex. A, pp. 75-77).  By amended judgment rendered January 25, 2007, petitioner was adjudicated guilty and sentenced to concurrent terms of life in prison on Counts 1 and 2, and 25 years in prison followed 25 years probation on Count 4.  (Ex. A, pp. 138-140).  Petitioner initiated a direct appeal.  (Ex. A, p. 115).  Appellate counsel filed an *Anders* brief, asserting that no good faith argument could be made that reversible error occurred in the trial court.  (Ex. G).  Petitioner was given the opportunity to file a *pro se* brief (Ex. H), but chose not to.  (Ex. PD-2, p. 3). The Florida First District Court of Appeal (First DCA) affirmed the judgment on March 28, 2008, per curiam and without a written opinion.  *Dobie v. State*, 979 So. 2d 222 (Fla. 1st DCA 2008) (Table) (copy at Ex. I).

---

[1] The offenses were alleged to have occurred between October 1, 2005, and November 23, 2005.

[2] All references to exhibits are to those provided at Doc. 19, unless otherwise noted.

On March 30, 2009, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which was dismissed (pursuant to petitioner's motion for voluntary dismissal) without prejudice to petitioner's re-filing a motion within Florida's two-year time limitation.  (Ex. J, pp. 1-3).  Petitioner re-filed his Rule 3.850 motion on June 22, 2009.  (*Id*., p. 4).  After additional amendments (Ex. K, pp. 1-37, 42-59), the circuit court struck all motions for postconviction relief with leave to amend within thirty days.  (Ex. K, pp. 72-94). Petitioner filed a timely second amended Rule 3.850 motion on July 30, 2010, raising nine grounds.  (Ex. K, pp. 99-155).  The circuit court denied relief without an evidentiary hearing.  (Ex. M, pp. 406-520).  The First DCA affirmed the denial of Grounds One, and Three through Nine, but reversed and remanded for the trial court to conduct an evidentiary hearing or to attach records conclusively refuting Ground Two (petitioner's claim that trial counsel was ineffective during plea negotiations for allegedly giving incorrect legal advice regarding the proof required to sustain a conviction for sexual battery, which caused petitioner to improvidently reject a plea offer).  *Dobie v. State*, 65 So. 3d 140 (Fla. 1st DCA 2011) (copy at Ex. P).

On remand, the postconviction trial court granted an evidentiary hearing (Ex. T, pp. 407-408), and, on August 23, 2011, appointed counsel to represent petitioner. (*Id*., pp. 415).  The evidentiary hearing was held October 4, 2011.  (Ex. T, p. 416; Ex. U-2 (transcript of evidentiary hearing); Ex. U-3 (copies of exhibits introduced at evidentiary hearing)).  Following the hearing, the circuit court denied relief on Ground Two.  (Ex. T, pp. 418-419).  The First DCA affirmed, per curiam and without a written opinion.  *Dobie v. State*, 109 So. 3d 784 (Fla. 1st DCA 2013) (Table) (copy at Ex. Y).  The mandate issued April 15, 2013.  (Ex. AA).

Petitioner initiated this federal habeas proceeding on April 15, 2013, by filing a habeas corpus petition (doc. 1), which he amended on May 24, 2013 (doc. 5).  The amended petition raises eight claims (the same claims presented in the original petition).  As relief, petitioner requests that his convictions on Counts 1 and 2 (the sexual battery counts) "be reduced to the appropriate permissive lesser offense[s]" and that he be allowed to enter into plea negotiations with the State on the two lesser offenses and "on Count Three." (Doc. 1, p. 14).  Respondent asserts that petitioner's claims fail for one or both of the following reasons:  (1) the state court's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts; (2) the claim is procedurally defaulted.  (Doc. 19, pp. 6-27).

APPLICABLE LEGAL STANDARDS

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary

to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C.  § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*,  633 F.3d 1272, 1292 (11th Cir. 2011).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the

Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct'

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)   the applicant has exhausted the remedies available in the courts of the

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

---

State; or

      (B) (i)  there is an absence of available State corrective process; or

        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

## DISCUSSION OF GROUNDS ONE THROUGH FOUR

Ground One      <u>Trial counsel was ineffective for failing to investigate, advise about, and raise the defense of involuntary intoxication.</u>  (Doc. 5, pp. 5, 1A-2A).

Petitioner asserts that prior to trial, he informed defense counsel that he was taking prescription medications at the time of the offenses.  Petitioner alleges that these medications caused him to be temporarily insane at the time of the crimes and qualified him to assert an involuntary intoxication defense.  Petitioner faults defense

counsel for failing to investigate this line of defense by obtaining his medical records, which, according to petitioner, would have supported an involuntary intoxication defense. (Doc. 5, pp. 1A-2A). Petitioner adds that his incriminating statements to investigators at the time of his arrest – that he knew he had done wrong – was not an admission that he knew the wrongfulness of his actions at the time of the crimes, and thus would not have negated an insanity/involuntary intoxication defense. (Doc. 5, p. 1A). Petitioner asserts he exhausted this claim by raising it in his second amended Rule 3.850 motion. (Doc. 5, p. 5).

Respondent argues that petitioner is not entitled to federal habeas relief on this claim, because the state court's rejection of it was not contrary to or an unreasonable application of clearly established federal law, nor was the state court's decision based on an unreasonable determination of the facts. (Doc. 19, pp. 7-8). Petitioner replies that the state court's decision was unreasonable. (Doc. 24, pp. 1-7).

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690, 104 S. Ct. at 2066. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d

284 (2010).   "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

    B.    Federal Review of State Court's Decision

The state court rejected, on the merits, petitioner's claim that trial counsel was ineffective for failing to investigate and present an involuntary intoxication defense. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the governing standard.  (Ex. M, pp. Ex. M, pp. 410-411).  The circuit court denied petitioner's claim by adopting the "State's Response to Defendant's Amended Motion For Post Conviction Relief" (Ex. L), and incorporating that Response by reference as the court's own findings of fact and conclusions of law. (Ex. M, p. 411).  By doing so, the circuit court made these findings of fact and conclusions of law:

### Ground One

The defendant has claimed that his counsel was ineffective for not investigating and raising the defense of involuntary intoxication.  The

defendant claims in his amended motion that he informed his counsel that he was on prescription medications at the time he committed the offenses and that they "all of a sudden induced him into a temporary State of Insanity, and caused him to think in an abnormal manner." *Motion*, p. 7. The defendant claims he was under the "intoxicating influence of Toprol-XL" and that he did not "understand what he was doing, or what he was doing was wrong." *Motion*, p. 7.

Courts have held that "an accused may be completely relieved of criminal responsibility if, because of involuntary intoxication, he was temporarily rendered legally insane at the time he committed the offense." *Brancaccio v. State*, 27 So. 3d 739, 740 (Fla. 4th DCA 2010), citing to *Brancaccio v. State*, 698 So. 2d 597, 599 (Fla. 4th DCA 1997). The Court's definition of insanity includes "situations in which a person could not distinguish right from wrong as a result of the involuntarily-induced intoxicated state." *Id.*, at 741, citing to *Miller v. State*, 805 So. 2d 885, 887 (Fla. 2d DCA 2001). The burden is on the defendant to establish the involuntary intoxication defense. *Id.* He must first show that his condition was a result of the "introduction into the defendant's body 'of any substance which he does not know and has no reason to know has a tendency to cause an intoxicated or drugged condition.[']" *Id.* He would then have to show that the intoxicated condition "rendered him unable to understand what he was doing and to understand the consequences of his actions, or if he did understand, that he was unable to know that his action [sic] were wrong." *Id.* The defendant must also show that "he was taking the medication as prescribed and pursuant to a lawful prescription.[']" *Lucherini v. State*, 932 So. 2d 521, 524 (Fla. 4th DCA 2006).

The defendant has not met his burden in proving that the involuntary intoxication defense was valid. If anything, he has proven just he [sic] opposite. The defendant attached to his motion as Exhibit B some medical records from Dr. Fawzi Fawaz. The records attached to the defendant's most recent motion have areas that have been redacted. *See Motion, Exhibit B*. However, the defendant also filed a copy of Dr. Fawaz's records with his earlier Motion for Post-Conviction

relief and those records have been attached to this response. *See attached Exhibit A*. Those records indicate that the defendant was being treated for a respiratory and/or cardiac problem. As early as March 2004, the defendant was taking the medication Toprol. *See attached Exhibit A-7*. In that same report, the medical observation is that the defendant is "alert, oriented and in no acute distress." *Id*. A month later the same observation is made about the defendant. *See attached Exhibit A-3*. In both the months of September and December 2004, the defendant does not complain to his doctor of any problems with the medication Toprol XL and in fact reports that he is doing better with the medication and wants a refill. *See attached Exhibit A6 and A4*. The last record provided by the defendant is dated September 29, 2005, just before the offenses for which he was convicted occurred. That report contains the language of "his medicine is controlling him" to which the defendant referred in his motion. *Motion*, p. 7. *See also attached Exhibit A-5*. However, in his motion the defendant neglected to include the entire comment made by the doctor in his report. The medical report actually indicated that the defendant was being seen for hypertension and that he wanted a refill of his medication. It also reported that the defendant had been prescribed Toprol XL and that the defendant reported "his medicine is controlling him." *Id*. Immediately following that language the doctor states, "However, occasionally he still has the ectopic heart beat." *Id*. Further in the report there is an indication of "Controlled hypertension and tachycardia on Toprol" and the defendant is given a prescription with refills for the medication. *Id*. The only indication of the effects of Toprol on the defendant is that the medication is working and is controlling his condition. There is no indication of adverse side effects in the defendant's medical records from Dr. Fawaz's office. These records do not show that the defendant was operating under the intoxicating influence of prescription medication but rather show that the medication was working appropriately and that the defendant was alert and oriented.

   The defendant has also failed to show how the prescription medication caused him to become temporarily insane to the point that he did not know what he was doing and that he could not tell right from

wrong.  His conversation with Investigator Charisse Rivers indicates that the defendant was able to recall details from the offenses and that he knew what he had done was wrong.  *See Trial Transcript*, p. 111, line 3-p. 113, line 21.  *See also Trial Transcript*, p. 80, line 1-p. 84, line 22.  In *Brancaccio*, the court found that the defendant knew his actions were wrong, which negated the involuntary intoxication defense.  *See Brancaccio*, p. 741.  Other courts have also held that it is not ineffective assistance when a potential defense is not supported by the evidence.  *See Davis v. McNeil*, 2009 WL 860628 (M.D. Fla.) 2009, at 24.  In that case the defendant claimed his attorney should have presented a voluntary intoxication defense but his attorney felt that the defense would be undermined by the defendant's detailed confessions to the crime.  *Id.*, at 13.  The court agreed and  held that counsel was not ineffective in not presenting a voluntary intoxication defense. *Id.*, at 14.  A defense only becomes viable "when there is evidence to support such defense."  *Green v. Crosby*, 2005 WL 5966150 (N.D. Fla.) 2005, at 5.  In this case, any involuntary intoxication defense is negated by the defendant's knowledge that his actions were wrong as well as by the defendant's own recollection of the details of the offenses which prove that the defendant knew what he was doing at the time of the offenses.  The defense of involuntary intoxication was not a valid defense in this case.

Finally, during trial the defendant's own comments show that he did not have any evidence to present regarding intoxication.  Prior to the defense resting, the defendant was asked, "You didn't have any witnesses that were not disclosed today or any other evidence that she's not presented; is that right?"  The defendant replied, "Yes, sir."  If the defendant had any evidence of involuntary intoxication that he wanted to present in his defense, he was given the opportunity to do so.  "Solemn declarations in open court carry a strong presumption of verity."  *Green*, at 12.  The defendant told the court there was not additional evidence that he wanted presented yet now claims he did want evidence of his medication presented at trial.  The defendant's statement to the court during trial was made under oath and the defendant should be held to that statement.

> As to Ground One, the defendant's claim should be denied
> without hearing.

(Ex. L, pp. 192-195).  The First DCA summarily affirmed the denial of relief on Ground One. *Dobie v. State*, 65 So. 3d 140, 140 (Fla. 1st DCA 2011) (copy at Ex. P).

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard.  Accordingly, this court proceeds to consider petitioner's claim under AEDPA's "unreasonable application" standard.

As a preliminary matter, the state court's findings of fact are entitled to deference from this court. *See Rhode v. Hall*, 582 F.3d 1273, 1282 (11th Cir. 2009) ("Despite the fact that the state habeas court adopted the State's facts verbatim, these findings of fact are still entitled to deference from this court unless [the petitioner] can show the facts to be clearly erroneous.").  The record amply supports the state court's factual determinations.   Petitioner has not shown that any factual determination was clearly erroneous. *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) ("A state court's . . . determination of facts is unreasonable only if no 'fairminded jurist' could agree with the state court's determination. . . .").

One of the state court's more significant factual findings was that the medical evidence upon which petitioner relies to show that his prescription medication Toprol-XL had an intoxicating effect on him, actually showed that the Toprol-XL was controlling petitioner's <u>hypertension and tachycardia</u>, not his <u>mind or behavior</u>. (S*ee* Dr. Fawaz's notes dtd. 9/29/05, at Doc. 19, Ex. L, p. 208).  This, in itself, is a reasonable basis to conclude that petitioner failed to establish prejudice under *Strickland*.

The state court also went on to conclude, reasonably, that petitioner failed to establish deficient performance or prejudice under *Strickland*, because petitioner's statements to DCF Investigator Heather Pagano and Walton County Sheriff's Office Investigator Charisse Rivers, statements of which defense counsel was aware, demonstrated that petitioner knew what he was doing when he molested his daughter. Contrary to petitioner's suggestion that he merely made a general admission that he knew he had done something wrong, petitioner recollected and described, in detail, what he had done.  As Investigator Pagano testified at trial:

> A [Investigator Heather Pagano]:  He [petitioner] told us that he had sexually abused [D.C.] on three separate occasions.  He told us that the first occasion, he went into her room while she was sleeping and stood beside her bed and pulled down her panties and fondled her vagina.  The second time, he went into her bedroom as she was sleeping and got into the bed with her, pulled down her panties and fondled her vagina with his hand and also rubbed his penis between her leg on her vagina until he ejaculated.  The third time it happened, he and the children had fallen asleep in the living room while watching television.  He woke up and fondled her vagina again with his hand and again rubbed his penis on her vagina until he ejaculated.
>
> Q [Prosecutor]:   Ms. Pagano, he described to you three separate occasions in which he had done something of a sexual nature to [D.C.]?
>
> A:  Yes, he did.
>
> Q:  Did he tell you when this had occurred?
>
> A:   He said the last time had occurred about a week prior to our interview; approximately on the 22nd of November, 2005.
>
> . . . .
>
> Q:  He mentioned the 22nd?

A: Uh-huh.

Q: But that was not the only instance he told you it happened?

A: No.

Q: Did he say how far back this abuse had gone; how long it had been going on?

A: He said it had been going on about a month.

(Ex. B, pp. 80 -81).  The prosecutor continued:

Q:  Did Jermaine Dobie indicate to you any remorse for what he had done?

A:  He said he was very remorseful for what he had done.

Q: Did he indicate to you whether he understood what he had done was wrong?

A: He did.  He understood that it was wrong.

(*Id*., p. 84).  Investigator Rivers also testified as to petitioner's detailed admissions:

Q [Prosecutor]:  When he [petitioner] finished signing the [*Miranda* waiver] form, and he agreed to talk to you, what did he say?

A [Investigator Charisse Rivers]:  He – I think he probably began – I believe he began by saying that – you know, that he had been concerned about that.

Q:  How did he say it to you?

A: He told me, I know that what I've done is wrong; it's something that I've been dealing with for awhile and it's – I just couldn't help myself. Basically.

Q:  Did he say what it was that he did?

A:  Yes, he did.  He told Heather and I about three separate instances.

Q:  And what did he say about each instance?

A:  He told us that –

Q:  Let's take the first instance.  What did he say to you about that?

A:  The first instance, he told us he woke up in the middle of the night; that everyone in the house was asleep; that he went into [D.C.]'s room. And he said, I touched her vaginal area.

I asked him if he penetrated her vaginal area and he said no, that he did not.  He said, I've only touched it and rubbed it.  He told me that he did that while he was standing beside her bed in the bedroom.

. . . .

Q:  And what else did he tell you that he did?

A:  He told us on the second occasion that he could remember, that he had gone into her bedroom at night; that he had climbed up into [D.C.'s] bunk bed with her; that he pulled her pants down.

Q:  And what did he say he did?

A:  He said, I put my penis between  her legs and rubbed it on her vaginal area.

Q:  Did he tell you anything more about that encounter with her?

A:  He told me that there was not any penetration; that he had rubbed – just rubbed his penis between her legs on her vaginal area.  And he said, I ejaculated.

Q:  What else did he tell you that evening?

A:  Well, he told me that he had pulled her pants down and her shirt up and that he was I believe wearing maybe just boxer shorts.

Q:  Did he indicate whether he had touched her on her skin or just on top of her clothes?

A:  Yes.  I'm sorry.  He said on her skin; he touched her on the skin.

Q:  You said there was also a third occasion he talked about.  Can you tell me what he said concerning that?

A:  Yes.  He told us that the third occasion had occurred on November 22nd of the previous – of 2005, which was the previous week.  He said that in the middle of the night, all the kids were asleep in the living room; that he had been watching T.V.; that he did the same thing to [D.C.] in the living room that he'd done to her on the previous occasion in her bed.  And he said he placed his penis between her legs on her vaginal area and rubbed until he ejaculated.

Q:  Did he say how long this had been going on?

A:  He indicated that it had been about four – somewhere between four and six weeks.

Q:  Did he express any type of remorse for what he had done?

A:  He did.  He told me that he had been praying about it; that he knew that what he had done was wrong and he knew that he needed help for what had happened; that he had wanted to talk to his pastor about it, but it was kind of embarrassing, so he'd never done that.

(*Id.*, pp. 110-113).

The state court concluded, as a matter of state law, that petitioner's detailed admissions destroyed the viability of an insanity defense.  This court defers to the state court's interpretation of state law.  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate

counsel claim, that "[o]n the one hand, the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted);[5] *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law).

Applying § 2254(d), this court cannot conclude that the state court's rejection of petitioner's claim was an unreasonable application of *Strickland*, or was factually unreasonable based on the evidence presented in the state court proceedings.  Because it is not clear that the state court erred at all, much less erred "so transparently that no fairminded jurist could agree with that court's decision," *Bobby v. Dixon*, — U.S. —, 132 S. Ct. 26, 27, 181 L. Ed. 2d 328 (2011), this court should deny federal habeas relief on Ground One.

---

[5]*Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F.  App'x 806 (11th Cir. 2007).

Ground Two          Trial counsel was ineffective for misadvising petitioner on the essential elements of sexual battery, which caused petitioner to reject a favorable plea offer. (Doc. 5, pp. 6, 2A-3A).

Petitioner alleges that prior to trial he received an offer from the State to resolve his case by entering a plea to the charges in exchange for a 25-year prison sentence followed by probation. Petitioner alleges that he rejected the offer because counsel misadvised him on the elements of sexual battery. Specifically, petitioner alleges that counsel told him the State was required to prove that his penis penetrated the victim's vagina or anus when, in fact, petitioner could also be found guilty if the State proved merely that his penis "had union with" the victim's vagina or anus. Petitioner claims that had he known the State could prove sexual battery by mere "union", he would have accepted the plea offer and received only a 25-year prison sentence instead of life. (Doc. 5, pp. 2A-3A).

Respondent asserts that petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is based on a reasonable determination of the facts and is not contrary to, or an unreasonable application of, the *Strickland* standard. (Doc. 19, pp. 8-16). Petitioner replies that the state court unreasonably determined the facts when it credited defense counsel's evidentiary hearing testimony over petitioner's testimony. (Doc. 5, p. 2A; Doc. 24, pp. 7-14).

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, as set forth above.

B.     Federal Review of State Court's Decision

Petitioner presented this claim to the state courts as Ground Two of his second amended Rule 3.850 motion. Initially, the postconviction trial court denied relief by adopting the "State's Response to Defendant's Amended Motion For Post Conviction

Relief" (Ex. L), and incorporating it by reference as the court's own findings of fact and conclusions of law.  (Ex. M, p. 411).  The First DCA reversed and remanded, explaining:

> We affirm the denial of grounds one, and three through nine of Appellant's motion; however, we reverse and remand for the trial court to conduct an evidentiary hearing or to attach records conclusively refuting Appellant's claim that trial counsel was ineffective for allegedly giving incorrect legal advice regarding the elements of sexual battery. On appeal from a summary denial of a facially sufficient motion, this court must reverse unless the postconviction record conclusively shows that the appellant is entitled to no relief. *See* Fla. R. App. P. 9.141(b)(2).
>
> Appellant argued that prior to rejecting a plea offer, his attorney advised that the State had to establish actual penetration in order to prove sexual battery.  *See* § 794.011(1)(h), Fla. Stat. (defining sexual battery as "oral anal, or vaginal penetration, or union with, the sexual organ of another . . . ").  Appellant alleged he would have accepted the offer had he known that proving penetration was not required for a conviction.  The State responded that Appellant could not reasonably rely upon his counsel's alleged misadvice because he was made aware of the charges both during jury selection and during the charging conference after the evidence was presented, yet Appellant failed to raise an objection.  The postconviction court adopted the State's response to Appellant's motion and incorporated it by reference.  Appellant's argument, however, is not that he was unaware of the charges, but that his attorney made an incorrect statement regarding the proof required to sustain the charges.  Although a transcript of the plea hearing is included in the record, it does not conclusively refute Appellant's claim.

*Dobie v. State*, 65 So. 3d 140, 140 (Fla. 1st DCA 2011).  On remand, the postconviction trial court appointed counsel to represent petitioner and conducted an evidentiary hearing on the claim.  Following the hearing, the court denied relief explaining, in pertinent part:

This Court convened an evidentiary hearing on this issue on October 4, 2011, at which Defendant and his former counsel both testified.[FN 1]  Defendant testified that he had no legal training and that his counsel had never informed him that the State could prove the charge against him by proving "union with" rather than "penetration."

> [FN 1:  For purposes of this order, the Court incorporates the transcript of the evidentiary hearing.]

Trial counsel testified that she had indeed explained the proper elements of the offense to Defendant numerous times.  She also testified that she had gone over the jury instruction with him in detail and that she had given him multiple copies of the relevant statutes.  She testified that she recalled informing Defendant specifically that the State could prove the charges based upon either union or penetration.  The Court finds counsel's testimony at the evidentiary hearing to be credible. Based upon counsel's testimony, therefore the Court finds that Defendant's allegation is properly denied.

(Ex. T, pp. 418-419).  The First DCA summarily affirmed without explanation. *Dobie v. State*, 109 So. 3d 784 (Fla. 1st DCA 2013) (Table) (copy at Ex. Y).

This court must defer to the state court's credibility determinations.   The Eleventh Circuit has emphasized:

> Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983).  We consider questions about the credibility and demeanor of a witness to be questions of fact.  *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc).  And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while a reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (*citing Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")))).

After careful review of the state court record, including the postconviction evidentiary hearing transcript and evidence, this court cannot say that no "fairminded jurist" could agree with the state court's determination that defense counsel's evidentiary hearing testimony was credible.  *See* § 2254(d)(2); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015).  Petitioner has not shown by clear and convincing evidence that counsel's testimony was not credible. *See* § 2254(e)(1).

Defense counsel's testimony establishes that counsel accurately and thoroughly advised petitioner of the elements of sexual battery prior to trial and during plea negotiations.  (Ex. U-2, pp. 26-56; Ex. U-3).  At the time petitioner rejected the State's 25-year offer, he knew from his communications with counsel that he could be convicted of sexual battery if the State proved his penis penetrated <u>or had union with</u> the victim's anus or vagina.  The reason petitioner rejected the offer, against counsel's advice, was that he did not believe his daughter (the victim) and his wife (the victim's mother) would appear for trial.  (Ex. U-2, pp. 37-38).  The state court's rejection of petitioner's claim was not contrary to *Strickland*, did not involve an

unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three        Trial counsel was ineffective for failing to challenge the voluntary
                    nature of petitioner's incriminating statements.  (Doc. 5, p. 8).

Petitioner claims trial counsel was ineffective for failing to challenge the voluntary nature of his incriminating statements to DCF Investigator Heather Pagano and Walton County Sheriff's Office Investigator Charisse Rivers.  Petitioner's statements were related through Pagano's and Rivers' trial testimony, as set forth above.  *See supra* Ground One.  Petitioner asserts that he was under the influence of prescribed medication (the same Toprol-XL cardiac medication), which caused him to be temporarily insane at the time he waived his *Miranda*[6] rights, and that counsel should have moved to suppress his statements on that basis.  (Doc. 5, pp. 8, 3A-4A). Respondent argues that petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is based on a reasonable determination of the facts and is not contrary to, or an unreasonable application of, the *Strickland* standard. (Doc. 19, pp. 16-17).[7]

---

[6]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7]Respondent also argues that the claim is procedurally defaulted because the state courts rejected it as facially insufficient, (doc. 19, pp. 16-17); however, the Eleventh Circuit has expressly rejected that procedural default argument and held that when a state court denies (or dismisses) a claim as facially insufficient, that is a rejection of the claim on the merits, not a ruling that the claim is procedurally barred.  *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) ("[J]ust as under our federal procedural rules, a Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes – at least for purposes of the procedural default analysis – a ruling 'on the merits' that is not barred from [federal habeas] review.  In short, whether the [state court] rejected the claims for facial insufficiency or only after concluding that they were refuted by the record, the determination would have been on the merits.").

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, as set forth above.

B.     Federal Review of State Court's Decision

Petitioner presented this claim to the state courts as Ground Four of his second amended Rule 3.850 motion.  The state court correctly identified *Strickland* as the governing standard (as detailed above).  The circuit court explained its reasons for rejecting petitioner's claim:

> **As to Ground 4** (*ineffective assistance of trial counsel by trial counsel's failing to move to suppress Defendant's involuntary confession*).  In this ground, Defendant alleges that he had taken Toprol XL just before the police interrogated him regarding the crimes.  He alleges that the medication had put him into a state of temporary insanity so that he did not give the "self condemning statements . . . freely, voluntarily, and intelligently."  Defendant argues that counsel should have investigated these issues and filed a motion to suppress his confession.
>
> In order to obtain relief on an allegation regarding failure to file a motion to suppress, Defendant must "prove that his Fourth Amendment claim is meritorious."  *McDonald v. State*, 952 So. 2d 484, 497 (Fla. 2006).  Trial counsel cannot be considered "ineffective for failing to file a motion that would not have been granted."  *Id.*  Furthermore, a facially sufficient allegation regarding ineffectiveness for failure to file a motion to suppress must include allegations that, if filed, the motion would have been granted, the information would have been suppressed, and the outcome of the proceedings would therefore have been different.  *See Nunez v. State*, 988 So. 2d 695, 697 (Fla. 2d DCA 2008).  *See also Strobridge v. State*, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009).
>
> Defendant's allegation is facially insufficient.  Defendant fails to allege affirmatively that, had counsel filed the motion to suppress, it

would have been granted.  Instead, he alleges that, had counsel filed the motion to suppress, "the court would have had to make a factual determination whether at the time the critical statements were made [w]hether the Defendant's mind was sufficiently clear and unhampered by the impact of the prescribed medication he had taken."  Such an allegation does not state facially sufficient grounds for postconviction relief.  As Defendant has been given opportunity to make his claims facially sufficient, this insufficient claim is properly denied.

Even were this claim sufficiently pleaded, it would still entitle Defendant to no relief as Defendant has failed to show deficient performance on the part of his attorney.  Defense counsel was concerned that Defendant's statements to police had been involuntary.  Hence, counsel sent Defendant to a psychologist for testing.[FN3]   The psychologist found that, although Defendant's intellectual abilities were slight impaired, Defendant had actually understood his *Miranda* rights at the time of his confession.  The psychologist also noted that Defendant had "reported that part of his motivation for giving a statement to law enforcement was that it would help this [victim], his family and himself."  The psychologist reported that upon being asked if he would give the same statement if he had it to do again, Defendant stated that he would do so after consulting with an attorney.  (*See* copy of Psychological Evaluation, attached to the State's Response).

> [FN 3:  The Court would note that the attorney who referred Defendant for psychological testing was a predecessor to the attorney whose performance is at issue in the instant motion.]

Furthermore, although the psychological evaluation report includes information regarding Defendant's coronary condition, the report does not reflect that Defendant ever mentioned the effects that the medication was having on him, even though he had allegedly told his own physician weeks before committing the crime that the medication was "controlling him."  In fact, according to the psychologist's report, Defendant mentioned his history of "drug" and substance abuse, but the report lacks any reference at all to prescription drugs.  The Court finds

it unlikely that Defendant would have failed to discuss such a significant problem with the psychologist who was attempting to determine whether Defendant's confessions to police were given voluntarily. Counsel cannot be found deficient for relying upon the report of the psychologist in determining that because Defendant had actually understood his *Miranda* warnings, a motion to suppress the confessions was not warranted. *See Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000) (stating that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct").

Also, Defendant has failed to prove prejudice. Based on the facts laid out in the psychologist's report, the Court does not find that a motion to suppress, had one been filed, would have been successful. Consequently, Defendant's fourth ground cannot entitle him to relief.[FN5]

[FN 5: In his Reply to the State's Response to this Court's Order to Show Cause, Defendant alleges that the psychologist could not have known about the temporary insanity issue because Defendant had not taken the offending medications before the interview with the psychologist. The Court does not find that Defendant's mental state at the time of his psychological evaluation had any bearing on his mental state at the time of his confession. The psychologist's report specifically stated that Defendant understood his *Miranda* warnings "*at the time of interrogation.*" (*See* copy of Psychological Evaluation, attached to the State's Response) (emphasis supplied). Further, Defendant's allegation that he had not taken the medication indicates that he would have been more clear-headed and able to communicate to the psychologist any problems that his medication had been causing. Therefore, this additional information cannot salvage Defendant's claim.]

(Ex. M, pp. 413-416) (footnote 4 omitted) (alternations in original).  The First DCA summarily affirmed.  *Dobie v. State*, 65 So. 3d 140, 140 (Fla. 1st DCA 2011) (copy at Ex. P).

Petitioner maintains that his *Miranda* waiver was unknowing and involuntary because he was under the influence of the medication prescribed by Dr. Fawaz (the Toprol-XL discussed in Ground One above).  The record reflects that early in petitioner's case, appointed defense counsel Assistant Public Defender Matthew Casey (who represented petitioner before he retained private counsel Ms. Bytell) arranged for petitioner to be evaluated by psychologist James Larson, Ph.D.,  due to Casey's "concern[ ] about the Defendant's intellectual functioning, and his vulnerability to give post-Miranda statements."  (Doc. 19, Ex. K, pp. 140-144 (copy also provided at Ex. L, pp. 304-308)).

Dr. Larson's report is dated February 13, 2006.  Dr. Larson's evaluation was based on psychological testing, review of provided discovery, and a "Mental Status Exam/Psychological Interview" with petitioner. (Ex. K, p. 140).  Dr. Larson met with petitioner on two occasions.  During Dr. Larson's interview with petitioner, petitioner provided the following history:   "The Defendant disclaims prior inpatient or outpatient mental health treatment.  However, he does report that he has had a significant history of substance abuse, and started using 'drugs' about age 13.  He has had blackouts previously."  (Ex. K, p. 140).  Petitioner described to Larson his physical health problems, including his "coronary problem" and "irregular heartbeats," with no mention of the Toprol (or any other medication prescribed for his condition), and with no mention of an intoxicating effect from medication prescribed for this condition.  (*Id*., p. 141).  Petitioner also described to Larson how he <u>felt</u> both physically and mentally, in terms of both the past and present.  (*Id*., pp.

141, 142).  Petitioner described himself physically as "feel[ing] ill much of the time" and described himself mentally as "fe[eling] depressed most of his life."  (*Id.*).  Again, petitioner made no mention of ever feeling intoxicated or mentally disoriented.  (*Id.*).  Dr. Larson concluded that petitioner understood his *Miranda* rights at the time of his waiver.  (*Id.*, p. 143).  Larson made the following additional comments:

> In interviewing the Defendant in some detail, another factor emerged.  The Defendant reported that part of his motivation for giving a statement to law enforcement was that it would help this boy [sic], his family and himself.  He wanted to "get it off my chest."  He made it clear to me that he knew he did not have to talk to law enforcement officers, but he wanted to help his family.

> When asked if he could do it over, if he would still give a self-incriminating statement, he stated he would, but this time he would do it differently.  That is, he stated that he would consult with an attorney first.  He then added spontaneously, "If I keep it in, it's not solving anything though."

(Ex. K, pp. 143-144).

Investigator Pagano and Investigator Rivers described the circumstances surrounding petitioner's statements.  After Pagano interviewed D.C. at her school, Pagano and Rivers went to D.C.'s home "to find the mother and the other children."  (Ex. B, p. 74).  While Pagano and Rivers were discussing the allegations with D.C.'s mother, petitioner arrived at the home.  (*Id.*, pp. 76-77).  Pagano and Rivers sent D.C.'s mother to another room so they could interview petitioner in private.  (*Id.*, p. 77).  Rivers testified:

> A:  We sat down on the couch together and I explained to him that we had received a report through the hot line; that we were in the process of doing an investigation; and that it concerned sexual abuse.  Mr. Dobie said to me, I touched her.

And I said, Excuse me?

And he said, I'm not going to lie to you; I have touched her.

Q [Prosecutor]:  Did he tell you who he was referring to?

A:  Well, he knew that we had talked about the fact that the report was about [D.C.].

Q:  Okay.

A:  And the sexual abuse of [D.C.].

Q:  When he said this to you, what did you do then?

A:  I advised him of his Miranda rights.

Q:  Did you do that from memory or from what?

A:  No.  I did it from a printed form that we use that has the Miranda rights on it listed.

(Ex. B, pp. 107-108).  Investigator Rivers identified State's Exhibit 2 as the form she used to advise petitioner of his constitutional rights.  (*Id*., p. 108-109).  Rivers testified:

Q [Prosecutor]:  Is that the form that you used in advising Mr. Dobie of his rights that day?

A [Rivers]:  Yes, it is.

Q:  On that form, does it contain all the rights that he has?

A:  Yes, it does.

Q:  The rights that he was waiving?

A:  Yes.

Q:  Did you go over each and every one of those rights with him?

A:  I did.

Q:  Did you note on that, as you went over those rights, that you had done so?

A:  I did.  I read it to him, each of the rights, and after each one of them, I asked if he understood what that right was.  And he indicated  yes. And when he did so, I checked a particular right.

Q:  And you did so for each of those rights?

A:  Yes, I did.

Q:  Did you make him any promises to get him to talk to you?

A:  No, I did not.

Q:  Did you, in any way, threaten him to get him to speak with you that day?

A:  No.

Q:  Ms. Pagano was with you.  Did she, in any way, threaten him to get him to talk to you?

A:  No, she did not.

Q:  Did she make any promises to him?

A:  No.

Q:  Did Mr. Dobie freely and voluntarily waive those rights and agree to speak to you that day?

A:  Yes.

Q:  And did he appear to understand what he was doing at the time –

A:  Yes.

Q:  – he signed that form waiving his rights?

A:  Yes, he did.

(Ex. B, pp. 109-110).  Investigator Rivers then related petitioner's statements, as detailed above.  *See supra* Ground One.

Petitioner argues that defense counsel Bytell should have moved to suppress his statements to the investigators, notwithstanding Dr. Larson's report, on the basis of "petitioner's prescription drug use, and their adverse effects that they placed on his intellectual abilities. . . ."  (Doc. 5, p. 3A).  Petitioner alleges that Bytell was aware of this basis for suppression, because petitioner "told counsel that at the time of the waiver he became confused, speeding, delusional, and throughout the interrogation he was hearing voices, and crying hysterically."  Petitioner asserts that had Bytell moved to suppress his statements based on petitioner's temporary insanity at the time of his *Miranda* waiver, the motion to suppress would have been granted, his statements would have been suppressed, and the outcome of the trial would have been "more favorable" to him.  (Doc. 5, p. 4A).  Petitioner argues that the state postconviction court's ruling on this claim should be rejected, because the state court failed to draw the "proper[ ] conclu[sion]" that counsel was ineffective.  (*Id*., pp. 3A-4A).

This court defers to the state circuit court's findings of fact, as they are amply supported by the record, are reasonable, and are presumed correct.  As the state court

noted, even taking as true petitioner's allegation that he advised Attorney Bytell that he was taking the heart medication prescribed by Dr. Fawaz (Toprol-XL) at the time he waived his *Miranda* rights and made his incriminating statements, it was not unreasonable for Bytell to decline to move to suppress petitioner's statements. There was no evidence to support a claim of involuntariness based on intoxication (other than petitioner's bare, self-serving allegation), and such claim ran counter to the defense expert's report. Had counsel investigated petitioner's medical records to verify/support his claim, she would have learned that petitioner's assertion was based wholly on his misrepresentation of a notation Dr. Fawaz made in his medical record concerning the medication "controlling" petitioner's condition (hypertension and tachycardia). The credibility of petitioner's allegation was further diminished by the fact that: (1) petitioner made no mention of the allegedly intoxicating effect of the Toprol-XL to his first attorney APD Casey who arranged for Dr. Larson's evaluation (a fact petitioner admits) (doc. 5, p. 4A); and (2) petitioner made no mention to Dr. Larson of being under the influence of an intoxicating substance at the time of his *Miranda* waiver, even though petitioner had ample opportunity to do so and knew that such information would be relevant. Petitioner described to Dr. Larson his history of substance abuse, his various health problems (including his heart condition), and how he was feeling mentally and physically, both in the past and present. (Doc. 19, Ex. K, p. 142). In light of all of this information and the information available to Attorney Bytell, the state court concluded, reasonably, that Bytell was not deficient for failing to seek suppression of petitioner's statements on grounds that petitioner was intoxicated/insane at the time he made them.

The state court also concluded, reasonably, that petitioner failed to establish prejudice under *Strickland*. The reasonableness of the state court's conclusion on the

prejudice prong is bolstered by the fact that had Attorney Bytell moved to suppress petitioner's statements, the investigators would have testified, as they did at trial, that petitioner was fully aware of and understood his constitutional rights and the consequences of waiving them, and that he voluntarily waived his rights.  The state court's conclusion concerning prejudice is also bolstered by the fact that petitioner's admissions to the investigators were not the only incriminating statements introduced at petitioner's trial.  Petitioner's wife testified that she spoke with petitioner after his arrest and  he admitted to having sex with D.C. three times.

(Ex. B, p. 69).  Petitioner has not established that had Attorney Bytell moved to suppress his statements on grounds of involuntariness arising from the allegedly intoxicating effect of Toprol, there is a reasonable probability his statements would have been suppressed and the result of his trial would have been different.

The state court's rejection of petitioner's claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four | Trial counsel was ineffective for failing to investigate whether petitioner was competent to stand trial, and for failing to move for a competency examination for that purpose.  (Doc. 5, pp. 10, 5A-6A).

This ground is the third claim petitioner presents based on his taking of Toprol-XL.  The primary difference is that in this claim petitioner asserts not only that the Toprol-XL so affected his mental state as to render him insane at the time of the crimes and at the time he waived his *Miranda* rights, but also that it rendered him incompetent to stand trial.  Petitioner expands on his claim as follows:

> Counsel was aware of petitioner's use of prescription drugs, and how petitioner believed the medications caused him to become insane at the time of the alleged crimes, and at the time he involuntar[il]y waived his Miranda rights. Counsel was made aware that petitioner had restarted taking one of the medications (Toprol XL) since being released on bond. Weeks prior to trial, petitioner was questioned by counsel, if he was still taking the medication. He informed her that he was.
>
> However, counsel fail[ed] to determine by the fact she was informed that the psychotropic drugs caused petitioner insanity at the time of the alleged crimes, and the interrogation, and this being reasonable cause to question petitioner's competency, in addition to her own observations of petitioner's emotional breakdowns, his unrealistic statements to her, his inability to speak for himself, and his inability to make decisions for himself, and his memory loss.

(Doc. 5, p. 5A). Petitioner alleges he was in a "zombie-like" state during trial, and that this, combined with his "emotional breakdowns" would have put a reasonable attorney on notice that he was not competent to proceed. (*Id*., 5A-6A). Respondent argues petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim was based on a reasonable determination of the facts and a reasonable application of *Strickland*. (Doc. 19, p. 18). Petitioner replies that he is entitled to relief because the state court unreasonably applied *Strickland*. (Doc. 24, p. 18).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, as set forth above.

B.    Federal Review of State Court's Decision

Petitioner presented this claim to the state courts as Ground Five of his second amended Rule 3.850 motion. The state court correctly identified *Strickland* as the

governing standard (as detailed above), and explained its reasons for rejecting this claim:

> **As to Ground 5** (*ineffective assistance of trial counsel by trial counsel's failing to move for a competency hearing to determine whether Defendant was competent to stand trial*).  In the instant claim, Defendant alleges that pretrial, Defendant exhibited "irrational behavior and lack of ability to grasp the essential concept of the proceedings as well as his inability to rationally understand and/or meaningful[ly] assist counsel."  Defendant also alleges that during trial he sat "in a zombie-like state, sometimes unresponsive to his counsel."  Defendant alleges that counsel should have "concluded from her observations of the Defendant's . . . behavior" that he was incompetent to stand trial.
>
> The test for competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him."  *Lane v. State*, 388 So. 2d 1022 (Fla. 1980) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  The Supreme Court of Florida has laid out the following framework for use by a postconviction court in evaluating a claim of incompetency:
>
>> In order to evaluate this claim in a postconviction setting, a court must answer two questions:  "(1) whether the court could make a meaningful retrospective evaluation of the defendant's competence at the time of trial; and, if so, (2) whether the defendant was in fact competent at the time of trial."  Some of the factors to be considered include:  the defendant's appreciation of the charges and the range and nature of possible penalties; the ability to assist one's attorney and disclose relevant facts surrounding the alleged offense; the ability to manifest appropriate courtroom behavior; and the capacity to testify relevantly.
>
> *Lawrence v. State*, 969 So. 2d 294, 304 (Fla. 2007) (citations omitted).  After a review of the record in this case, the Court finds that there is

sufficient record evidence to make a "meaningful retrospective evaluation of the defendant's competence at the time of trial" based on the criteria laid out in *Lawrence*.

## Assist Attorney

The record indicates that Defendant was able to assist his attorney at trial in that, at the conclusion of the jury selection process, the Court noted that Defendant had been present and participated with counsel in the selection.  The Court then asked defendant whether he was satisfied with the jury that had been selected, and Defendant replied that he was. (*See* copy of page 97 of Transcript of *Voir Dire*, at Attachment # 7, hereto).  Toward the end of the trial, when the Court asked him whether there were any witnesses or evidence that he wanted presented and had yet to be presented, he said no.  (*See* copy of page 176 of Transcript of Trial, at Attachment # 6, hereto).

## Disclose Relevant Facts

As shown in detail below, Defendant's own motion indicates that he was able to "disclose relevant facts surrounding the alleged offense" to his counsel, including information of his medical problems, his state of mind at the time of his confession, the issue of the broken washing machine, and the last time he had had sex with his wife.

## Appropriate Courtroom Behavior

Also, the record indicates that Defendant's demeanor at all stages of the trial was appropriate.  Nothing in the transcripts of *voir dire*, trial, or sentencing indicates that Defendant was disruptive or otherwise behaved inappropriately.  Rather, the record shows that Defendant was alert and responsive at trial, even asking that his counsel move the Court to have an envelope containing physical evidence opened so that he could view such evidence and, subsequently, inspecting each piece of physical evidence introduced during that witness's testimony. (*See* copy of pages 148-54 of Transcript of Trial, at Attachment # 6, hereto).

Capacity to Testify

Further, the record supports a finding that Defendant had the capacity to testify relevantly.  Although Defendant did not testify in his own behalf, when the Court asked Defendant in a colloquy about his decision not to testify, his answers were appropriate and relevant.  In fact, the Court asked Defendant a total of seven times whether he understood his various rights and his waiver of the right to testify.  Defendant answered in the affirmative each time, showing that he understood the factual proceedings against him.  He was also able to answer the Court appropriately when asked the name of his brother.  (*See* copy of pages 171-75 of Transcript of Trial, at Attachment # 6, hereto).  Further, Defendant was able to write a coherent statement and present it to the Court at sentencing, indicating his understanding of the convictions, his remorse for his actions, and his desire to be given a second chance.[FN 6]

> [FN 6:  Defendant presented part of the written statement to the Court on his own; when defendant became unable to continue due to being overcome with emotion, his attorney finished the presentation of the statement.]

Appreciation of Charges and Penalties

Additionally, at sentencing, Defendant's attorney indicated that Defendant understood the penalties that accompanied his convictions.  Defendant also indicated in his written statement that he understood the convictions and that he wanted the Court to allow him to go home to his family rather than putting him in prison.  (*See* copy of pages 10-12 of Transcript of Sentencing, at Attachment # 8, hereto).

Based on the foregoing facts and record evidence, the Court finds that Defendant was indeed competent to stand trial as measured by the *Lawrence* standard.  Counsel cannot be considered deficient for failing to move for a competency evaluation when the record shows no indication that Defendant was incompetent to proceed.

The court would note that the psychologist's report buttresses the Court's conclusion in this instance.  Defendant alleges that he was interviewed by the psychologist on two different dates in early 2006.  After those interviews, the psychologist issued a psychological evaluation regarding defendant.  A careful review of that document indicates that the psychologist noted Defendant's low IQ, naivete, insecurity in decision making, and impairments both emotionally and in making judgments.  The psychologist does *not* note, however, any inability of Defendant to communicate his thoughts and feelings adequately or to understand the questions and discussions involved in the interviews, despite the fact that the psychologist "interview[ed] the Defendant in some detail."  (*See* copy of Psychological Evaluation, attached to the State's Response).  There was therefore no indication to the Court, to counsel, or to the psychologist that Defendant might be incompetent to proceed to trial.

The Court finds, additionally, that this allegation is not credible in that it contradicts other of Defendant's allegations in the instant motion.  In this ground (ground five), Defendant alleges that he was unable to assist his attorney, unable to understand the proceedings, and unable to communicate appropriately.  However, in grounds one, four, and nine of his motion, Defendant states that he had communicated to his attorney information to assist in his defense.  In ground one, he alleges that he had informed his attorney prior to trial about his psychological problems [FN 7] and the "impairments" caused by his use of Toprol XL.  He also alleges that he had informed his attorney that his prescription medication was "controlling him."  In ground four, he asserts that "he had informed his lawyer about his questionable state of mind at the time the statements were procured by law enforcement" and that, had counsel acted on the information that Defendant had given her, she would have had "the objective and relevant evidence necessary to challenge the Defendant's incriminatory statement."  In his final ground, Defendant alleges that he had told his attorney that the agitator on the family washing machine was broken, causing the laundry to have lingering stains even after having been washed.  He also asserts in that ground that he had informed counsel of a sexual encounter with his wife and had given counsel the exact date and time of the encounter, as well

as informing counsel of the couple's breakfast plans on the day of the encounter.

> [FN 7:  The Court would also note that Defendant's claim is rendered more incredible by the fact that at the time of the psychological evaluation, Defendant disavowed any previous mental health treatment of any kind, belying Defendant's allegations there that he has a "history of psychological disorders" that were being treated by Dr. Fawaz. (*See* copy of Psychological Evaluation, attached to the State's Response).]

Also, Defendant indicates in grounds two and three of his motion that he did indeed understand his conversations with counsel.  In ground two he indicates that he understood counsel so well that his understanding of counsel's representations of the law and the possible consequences of going to trial swayed him to reject the proffered plea.  In ground three, he states that "based on his lawyer's line of questioning through the interpreters as well as the off-the-record discussions between himself and [counsel], the competency of [the victim] was a great concern to the defense."  Therefore, Defendant understood his conversations with counsel well enough to know that the victim's competency to testify was "a great concern."

These allegations are not consistent with defendant's allegations in the instant ground, as each of the facts above shows a rational Defendant concerned with and involved in his own defense.  Therefore the Court does not find Defendant's allegations that he was incompetent at the time of trial to be credible.  *See generally Montero v. State*, 996 So. 2d 888, 891 (Fla. 4th DCA 2008) (noting that "[t]he general rule is that a Defendant's allegations in a rule 3.850 motion must be accepted as true, and that an evidentiary hearing is required if the allegations are not conclusively refuted by the record.  An exception exists, however, where the allegations are inherently incredible").  Consequently, Defendant's ground five cannot entitle him to relief.

(Ex. M, pp. 308-313).  The First DCA summarily affirmed.  *Dobie v. State*, 65 So. 3d 140, 140 (Fla. 1st DCA 2011) (copy at Ex. P).

This court defers to the state circuit court's findings of fact, as they are amply supported by the record, are reasonable, and are presumed correct.  *See Oats v. Singletary*, 141 F.3d 1018, 1025 and n.15 (11th Cir. 1998) (state postconviction court's determination that petitioner was competent to stand trial was a factual finding entitled to a presumption of correctness, and would not be overturned on federal habeas review unless the finding was not fairly supported by the record; noting that state court's ultimate finding of petitioner's competency was supported by findings that petitioner knew the charges against him and possible penalties; that he testified rationally and relevantly at pre-trial hearing; that he was able to follow and understand the testimony of witnesses at trial; and that he understood his subpoena power to call witnesses and the roles of the judge, jury, prosecutor and defense counsel).  Given the facts as found by the state court, nothing about the state court's rejection of petitioner's claim is inconsistent with Supreme Court precedent or otherwise objectively unreasonable.  The state court's decision is supported by the record and *Strickland* itself.  Petitioner is not entitled to federal habeas relief on Ground Four.

## DISCUSSION OF GROUNDS FIVE THROUGH EIGHT

Ground Five       Appellate counsel was ineffective for not raising the issue of the trial court's erroneous denial of a judgment of acquittal.  (Doc. 5, pp. 6A-7A).

Ground Six        The prosecutor knowingly used false testimony from DCF Investigator Heather Pagano.  (Doc. 5, p. 7A).

| | |
|---|---|
| <u>Ground Seven</u> | <u>Trial counsel was ineffective for failing to object to the trial court's admission of petitioner's incriminating statements without first establishing "the corpus delicti test and/or the trustworthy doctrine."</u>  (Doc. 5, p. 8A). |
| <u>Ground Eight</u> | <u>The prosecutor failed to prove petitioner's guilt of capital sexual battery beyond a reasonable doubt.</u>  (Doc. 5, pp. 8A-10A).[8] |

Petitioner admits on the petition form that he did not exhaust any of these four claims in state court.  (Doc. 5, pp. 7A-10A).  Petitioner explains that he was proceeding *pro se*, is untrained in the law and relied on the assistance of an inmate law clerk in drafting his pleadings.  (*Id*.).  Respondent asserts a procedural default defense to Grounds Five through Eight.  (Doc. 19, pp. 18-27).

In Florida, claims of ineffective assistance of appellate counsel must be raised in a habeas corpus petition filed in the court to which the appeal was taken.  Fla. R. App. P. 9.141(d).  The habeas petition must be filed within two years after the judgment and sentence become final on direct review.  Fla. R. App. P. 9.141(d)(5). There is no doubt that petitioner's ineffective assistance of appellate counsel claim raised in Ground Five, and possibly Ground Eight, are barred by Fla. R. App. P. 9.141(d)(5), as more than seven years have passed since petitioner's judgment and sentence became final on direct review.  Grounds Five (and Eight) are procedurally defaulted for purposes of federal habeas.   Petitioner's allegation that he was proceeding *pro se* and relying on the assistance of an inmate law clerk is insufficient to establish cause to excuse his procedural default.  "In general, lack of an attorney and attorney error in state post-conviction proceedings do not establish cause to excuse a procedural default."  *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246,

---

[8]Petitioner's reply refers to Ground Eight as an ineffective assistance of appellate counsel claim.  (Doc. 24, p. 23).

1260 (11th Cir. 2014) (*citing Coleman v. Thompson*, 501 U.S. 722, 757, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).  Although in *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d (2012), the Supreme Court "announced an equitable rule whereby a federal petitioner may establish cause, in narrow circumstances, to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim," *Lambrix*, 756 F.3d at 1248-49, *Martinez* has not been extended to ineffective assistance of appellate counsel claims.  The Eleventh Circuit has not published an opinion on this issue, but has stated:  "By its own emphatic terms, . . . *Martinez* is limited to claims of ineffective assistance of <u>trial</u> counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel."  *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) (emphasis added).  The majority of other circuits to have considered the issue have rejected a habeas petitioner's proposal to extend *Martinez* to ineffective assistance of appellate counsel claims.  *See Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) (declining to extend *Martinez* to procedurally defaulted claim of ineffective assistance of appellate counsel); *Reed v. Stephens*, 739 F.3d 753, 778 n. 16 (5th Cir. 2014) ("To the extent [petitioner] suggests that his ineffective-assistance-of-appellate-counsel claims also should be considered under *Martinez*, we decline to do so."); *In re Sepulvado*, 707 F.3d 550, 554 & n. 8 (5th Cir. 2013) (noting that *Martinez*, by its terms, applies only to ineffective-assistance-of-trial-counsel claims); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law – ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) ("*Martinez* applies only to 'a prisoner's procedural default of a claim of ineffective assistance at trial,' not to claims

of deficient performance by appellate counsel."); *Moody v. Thomas*, — F. Supp. 3d —, 2015 WL 1004683, at \*78 (N.D. Ala. Feb. 20, 2015) (declining to extend *Martinez* to procedurally defaulted claim of ineffective assistance of appellate counsel); *but see Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir.2013) (holding that *Martinez* extends to Sixth Amendment ineffective-assistance-of-appellate-counsel claims). Petitioner's procedural default of Grounds Five and Eight bars federal habeas review of them.

Petitioner's claims of trial error raised in Ground Six (prosecutorial misconduct) and Ground Eight (insufficient evidence) – must be raised on direct appeal. Petitioner failed to raise Grounds Six and Eight on direct appeal and is now barred by state procedural rules from presenting them to the state courts. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Petitioner was represented by counsel in his direct appeal. Appellate counsel's ineffectiveness cannot serve as cause for petitioner's procedural default of Grounds Six and Eight, because petitioner did not raise a claim of ineffective assistance of appellate counsel in state court and consequently has procedurally defaulted it. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); *Hill v. Jones*, 81 F.3d 1015, 1029-31 (11th Cir. 1996); *Dowling v. Sec'y for Dep't of Corr.*, 275 F. App'x 846 (11th Cir. 2008) (rejecting habeas petitioner's contention that appellate counsel's ineffectiveness was the cause for his failure to raise federal constitutional claims on direct appeal in state court; explaining: "Dowling did not raise this particular

ineffective assistance of appellate counsel claim in his petition for state habeas relief. Because Dowling did not raise his ineffective assistance of appellate counsel claim in state court and is precluded from seeking additional review of that claim in state court, Dowling's ineffective assistance of appellate counsel claim is procedurally defaulted and cannot be considered as cause for the default of his trial court error claim.").

Petitioner's ineffective assistance of trial counsel claim (Ground 7) could have been raised in petitioner's Rule 3.850 proceeding, but was not.  Petitioner is now barred by state procedural rules from returning to state court to obtain state-court review.  *See* Fla. R. Crim. P. 3.850(h) ("[A] court may dismiss a second or successive motion . . . if new and different grounds are alleged [and] the judge finds that the failure of the defendant or attorney to assert those grounds in a prior motion constituted an abuse of the procedure or there was no good cause for the failure of the defendant or defendant's counsel to have asserted those grounds in a prior motion."). The record establishes, and petitioner concedes, that after the First DCA's remand, petitioner was appointed postconviction counsel.   Petitioner asserts that "postconviction counsel did not help, question, or attempt to help Dobie find additional errors to be raised at that point." (Doc. 24, p. 21).  This allegation does not establish cause under *Martinez*.  "While *Martinez* did not establish a constitutional right to counsel in state post-conviction proceedings, it did adopt the constitutional standard from *Strickland* as the standard governing petitioners' claims that their post-conviction counsel's conduct should excuse a procedural default."  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014) (*citing Martinez*, 132 S. Ct. at 1318).  Petitioner must establish that his postconviction counsel's conduct "fell below an objective standard of reasonableness," and that, "but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Hittson*, the Eleventh Circuit cautioned that a petitioner seeking to satisfy *Martinez* "must show more than the mere fact [postconviction counsel] failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims." *Id*. at 1263. The Eleventh Circuit explained:

> Obviously the merits of the underlying ineffective-assistance claims have some bearing on both *Strickland* prongs; collateral counsel would clearly not fall below *Strickland*'s minimum competency requirements by deciding not to raise a meritless claim, and a petitioner would also not be prejudiced by his counsel's failure to do so.
>
> But the merits of the underlying claim is only a part of the *Strickland* analysis. With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective-assistance claims that he now wishes his collateral counsel had raised. However, a petitioner does not establish constitutionally defective performance simply by showing that (a) potentially meritorious claims existed and (b) his collateral counsel failed to raise those claims. *Murray*, 477 U.S. at 486, 106 S. Ct. at 2644 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983). "[A] per se rule that . . . the professional advocate, [is not] allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id*. at 751, 103 S. Ct. at 3313.
>
> As we have explained, *Strickland* instructs courts to "indulge a strong presumption that counsel's conduct falls within the wide range

> of reasonable professional assistance" – that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 689-90, 104 S. Ct. at 2065-66.  To overcome this presumption, a petitioner must "establish that no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.2000) (en banc).

*Id*. at 1262-63 (alteration in original) (footnote omitted).

Petitioner's conclusory assertion in his reply that postconviction counsel failed to raise any additional instances of ineffective assistance of trial counsel is insufficient to establish cause under *Martinez*.  Petitioner does not explain why the performance was deficient or how, if the performance was deficient, he was prejudiced.

Petitioner's Grounds Five through Eight are procedurally defaulted.  Petitioner has made none of the requisite showings to excuse his procedural default.  Petitioner's procedural default bars federal habeas review of Grounds Five through Eight.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 5), challenging the judgment of conviction and sentence in *State of Florida v. Jermaine Marlon Dobie*, Walton County, Florida, Circuit Court Case Number 05-CF-931, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 1st day of July, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cɪʀ. R. 3-1; 28 U.S.C. § 636.